UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 21-155 |
| v. | * | SECTION: "L" |
| RANSFORD ACKAH | * | |

* * *

## FACTUAL BASIS

The United States and defendant **RANSFORD ACKAH** ("**ACKAH**") stipulate and agree that the below facts are true and that they would have been proven beyond a reasonable doubt had this matter proceeded to trial. The United States and **ACKAH** further stipulate and agree that these facts provide a sufficient basis for a plea of guilty to the charge that **ACKAH**, not being lawfully entitled a certificate, license, and document issued to officers and seamen by any officer and employee of the United States authorized by law to issue the same, did receive and possess said certificate, license, and document, with intent unlawfully to use said certificate, license, and document, in violation of Title 18, United States Code, Section 2197. The below facts are offered for the purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not necessarily describe all the details of the offense or **ACKAH**'s complete knowledge of the offense.

**A.   At all times relevant herein:**

Federal statutes and regulations ("federal law") authorized the United States Coast Guard ("USCG") to issue merchant mariner credentials ("MMCs") and related endorsements. Under federal law, all mariners employed aboard United States merchant vessels greater than 100 gross registered tonnage, with a few limited exceptions, were required to have valid MMCs. Furthermore, to serve in various positions, federal law required mariners to have particular



AUSA
Defendant
Defense Counsel

endorsements added to their MMCs. Consequently, an MMC and each endorsement to an MMC each constituted a "certificate, license, or document," as described in Title 18, United States Code, Section 2197.

Endorsements determined what position mariners could work, on what kind of vessels, and in what waters. The presence of an endorsement on an MMC indicated that the mariner was qualified to serve in the specified capacity and that he had met all legal requirements for that endorsement. Federal law prohibited a mariner from serving in a position for which he lacked the required endorsement. Similarly, federal law prohibited a business from employing a mariner in a position for which he lacked the required endorsement.

In order to obtain an MMC, a mariner was required to meet various requirements and to take an oath, promising to faithfully and honestly perform all the duties required by the laws of the United States. For many endorsements, federal law required mariners to pass USCG-administered examinations. These examinations tested mariners' knowledge and training to safely operate under the authority of the endorsements. The examinations, which typically consisted of numerous separately-graded modules, were administered at USCG regional exam centers. One such regional exam center, known as REC New Orleans, was located in the Eastern District of Louisiana. USCG employees at the regional exam centers entered the scores into a computer system used to manage the issuance of credentials to mariners and to process applications for MMCs and endorsements.

In some situations, passing an examination for one endorsement could enable a mariner to obtain one or more additional endorsements. This could occur, for example, if the examination fulfilled a requirement for an additional endorsement or if obtaining the tested for endorsement fulfilled a requirement for an additional endorsement.

2

AUSA C L
Defendant
Defense Counsel



**B.     ACKAH received, possessed, and intended to use endorsements to which he was not lawfully entitled**

ACKAH was a mariner who sought to add what is known as a Third Assistant Engineer endorsement to his MMC. As **ACKAH** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center.

Sharron Robinson ("Robinson") was a maritime industry worker known to **ACKAH**. Beverly McCrary ("McCrary") was a former USCG employee at REC New Orleans. Robinson informed **ACKAH** that McCrary could, in exchange for money, arrange for mariners to receive false passing examination scores at REC New Orleans.

Prior to March 25, 2016, **ACKAH** formed an agreement with Robinson and McCrary to pay Robinson a sum of money in exchange for McCrary arranging for a USCG employee at REC New Orleans to falsely report that **ACKAH** had passed the examination required for a Third Assistant Engineer endorsement. Pursuant to this agreement, **ACKAH** paid Robinson a sum of money.

As a result of **ACKAH**'s conduct, on or about March 25, 2016, a USCG employee at REC New Orleans falsely reported in a USCG computer system that **ACKAH** had passed the examination associated with his application for a Third Assistant Engineer endorsement. As **ACKAH** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **ACKAH** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **ACKAH** intentionally causing the USCG examiner to make this false entry, the USCG issued **ACKAH** a Third Assistant Engineer endorsement.

3

AUSA 
Defendant
Defense Counsel

**ACKAH** later sought to add what is known as a Designated Duty Engineer ("DDE") endorsement to his MMC. As **ACKAH** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center. Prior to March 9, 2017, **ACKAH** formed an agreement with McCrary to pay McCrary a sum of money in exchange for McCrary arranging for a USCG employee at REC New Orleans to falsely report that **ACKAH** had passed the examination required for a DDE endorsement. Pursuant to this agreement, **ACKAH** paid McCrary a sum of money.

As a result of **ACKAH**'s conduct, on or about March 9, 2017, a USCG employee at REC New Orleans falsely reported falsely reported in a USCG computer system that **ACKAH** had passed the examination associated with his application for a DDE endorsement. As **ACKAH** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **ACKAH** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **ACKAH** intentionally causing the USCG examiner to make this false entry, the USCG issued **ACKAH** a DDE endorsement.

As **ACKAH** knew, possession and use of the above-referenced endorsements and/or the examinations required for those endorsements, satisfied some of the requirements to obtain what is known as a Chief Engineer Offshore Supply Vessels ("Chief Engineer OSV") endorsement. **ACKAH** used his above-referenced fraudulently-obtained endorsements and/or false examination scores to obtain a Chief Engineer OSV endorsement. As **ACKAH** further knew, he was not lawfully entitled to the Chief Engineer OSV endorsement because the USCG issued it based on the belief that **ACKAH** legitimately obtained the above-referenced passing examination scores.

The aforementioned endorsements, to which **ACKAH** was not lawfully entitled, authorized **ACKAH** to, among other things, serve as the chief engineer of offshore supply vessels

4

AUSA _C M_
Defendant _R A_
Defense Counsel 

of any horsepower in any waters and serve as the third assistant engineer of vessels of any horsepower in any waters. The chief engineer of a vessel is the officer in charge of the engine department. The chief engineer is typically responsible for, among other things, all operations and maintenance having to do with engineering and mechanical equipment throughout the ship. The third assistant engineer of a vessel holds an officer-level position in the engine department. The third assistant engineer typically is responsible for, among other things, keeping watch of the engine room, and overseeing generators, the sewage system, and lube oil purifier.

From on or about March 25, 2016, through on or about March 10, 2020, in the Eastern District of Louisiana and elsewhere, **ACKAH** received and possessed the above-referenced endorsements and an MMC containing said endorsements, knowing that he was not lawfully entitled to them and with the intent to unlawfully use them.

_____  1/13/22
CHANDRA MENON             Date
Assistant United States Attorney

_____  1/13/22
JOSEPH P. RASPANTI         Date
Counsel for Defendant

_____  1-13-2022
RANSFORD ACKAH            Date
Defendant